IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALCO IRON & METAL COMPANY, | No. C 11-5181 CW |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION |
| v. | FOR SUMMARY JUDGMENT AND DENYING |
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, also known as CHARTIS SPECIALTY INSURANCE COMPANY, | PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (Docket Nos. 25 and 31) |
| Defendant. | |

_____/

Plaintiff Alco Iron & Metal Company (Alco) brings claims against Defendant American International Specialty Lines Insurance Company, now known as Chartis Specialty Insurance Company (Chartis), for breach of an insurance contract, breach of the implied covenant of good faith and fair dealing and declaratory relief. The parties have filed cross-motions for summary judgment. Having considered the papers filed by the parties and their arguments at the hearing on this motion, the Court GRANTS Chartis's motion for summary judgment and DENIES Alco's cross-motion.

BACKGROUND

The parties agree on all facts material to these cross motions.

On May 1, 2009, Caicos Investments, Inc. filed suit against Alco in the Mendocino County Superior Court. Chartis's Request for Judicial Notice (CRJN) ¶ 1, Ex. A (Compl., Caicos Investments, Inc. v. Alco Iron & Metal Co., Case No. SC-WL-CV-G-09-0053821).

In that action, Caicos alleged that, between March and June 2008, Alco entered its property under an oral license from Caicos's tenant, removed rail spurs from the property and sold them to a third party as scrap metal.  <u>Id.</u> at ¶¶ 7-9.  Caicos asserted claims for conversion and trespass.  <u>Id.</u> at ¶¶ 5-20.

On June 19, 2009, Alco tendered defense of the <u>Caicos</u> action to Chartis and provided a copy of the complaint to it.  Fredette Decl. ¶ 3, Ex. A.  From August 9, 2007 through August 9, 2008, Alco had insurance coverage under a Commercial General Liability and Pollution Legal Liability insurance policy issued by Chartis under policy number EG 2602101.  Perry Decl. ¶ 3, Docket No. 25-2.  Only Coverages A and B of the policy are at issue here.

Coverage A of the policy provided coverage for "bodily injury and property damage liability."  Perry Decl. ¶ 3, Ex. A (Policy), ALCO000378.  The insuring agreement stated that Chartis "will pay those sums that the insured becomes legally obligated to pay as damages because of <u>bodily injury</u> or <u>property damage</u> to which this insurance applies," and that it "will have the right and duty to defend the insured against any suit seeking those damages," but that it "will have no duty to defend the insured against any <u>suit</u> seeking damages for <u>bodily injury</u> or <u>property damage</u> to which this insurance does not apply."  <u>Id.</u> (emphasis in bold in original). It further provided, "This insurance applies to <u>bodily injury</u> and <u>property damage</u> only if: . . . The <u>bodily injury</u> or <u>property damage</u> is caused by an <u>occurrence</u> that takes place in the <u>coverage territory</u>."  <u>Id.</u> (emphasis in bold in original).  It had an exclusion for "Expected or Intended Injury," providing that the insurance does not apply to "<u>Bodily injury</u> or <u>property damage</u>

2

expected or intended from the standpoint of the insured." <u>Id.</u> at ALCO000379 (emphasis in bold in original).

Coverage B of the policy provided coverage for "personal and advertising injury liability." <u>Id.</u> at ALCO000384.  Similar to that in Coverage A, the insuring agreement for Coverage B stated that Chartis "will pay those sums that the insured becomes legally obligated to pay as damages because of <u>personal and advertising injury</u> to which this insurance applies," and that it "will have the right and duty to defend the insured against any <u>suit</u> seeking those damages," but that it "will have no duty to defend the insured against any <u>suit</u> seeking damages for <u>personal and advertising injury</u> to which this insurance does not apply."  <u>Id.</u> at ALCO000384-85 (emphasis in bold in original).

Section VI of the insurance policy set forth definitions.  It defined "bodily injury" to mean "bodily injury, physical injury, sickness, disease, mental anguish or emotional distress, sustained by any person, including death resulting from any of these at any time."  <u>Id.</u> at ALCO000412.  It defined "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  <u>Id.</u> at ALCO000417.  It defined "personal and advertising injury" as

> injury, including consequential <u>bodily injury</u>, arising out of one or more of the following offenses:
>
> . . .
>
>> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
>>
>> d. Oral or written publication, in any manner, of material that slanders or libels a person or

United States District Court
For the Northern District of California

> organization or disparages a person's or
> organization's goods, products or services;
>
> . . .
>
> h. Discrimination or humiliation that results in
> injury to the feelings or reputation of a natural
> person . . .

Id. at ACLO000417-18 (emphasis in bold in original).

On July 10, 2009, Alco filed an answer to Caicos's complaint, denying any liability.  Alco's Request for Judicial Notice (ARJN) ¶ 1, Ex. A.  Alco also filed a cross-complaint against Caicos's tenant, Sparetime Supply, Inc., ARJN ¶ 2, Ex. B.  Alco alleged that Sparetime had represented that it was authorized to negotiate the terms of Alco's use of the property, and asserted causes of action for contribution and indemnity against Sparetime.  Id. at ¶¶ 10-14.

On August 5, 2009, Chartis sent Alco a letter denying the tender of defense and stating that there was no coverage under the policy for the Caicos action.  Fredette Decl. ¶ 3, Ex. B.

On October 21, 2009 and again on March 4, 2010, Alco sent Chartis letters asking it to reconsider the tender of defense and indemnity.  Norma Decl., Exs. A and B.

On or about June 24, 2010, Caicos filed a first amended complaint (1AC), adding two causes of action against Alco for negligence and negligence per se under California Penal Code section 496a.  CRJN ¶ 2, Ex. B.

On July 2, 2010, Alco again tendered defense of the Caicos action to Chartis, stating that, in light of the negligence cause of action in the 1AC, "there is undoubtedly a potential for liability covered by the policy of insurance."  Fredette Decl. ¶ 5, Ex. C.

United States District Court
For the Northern District of California

On July 29, 2010, Chartis sent a letter to Alco denying the tender of defense of the <u>Caicos</u> action.  The denial was made on the basis that the 1AC did not allege an "occurrence" under the policy and that there was no coverage for "personal injury" based on "wrongful entry" because the subject premises were not occupied by a "natural person."  Fredette Decl. ¶ 6, Ex. D.

On August 9, 2010, the trial court sustained Alco's demurrer to both negligence causes of action.  CRJN ¶ 3, Ex. C, 2.

Prior to trial, Sparetime settled with Caicos for $50,000.  <u>Id.</u> at 5 n.1.  At the conclusion of trial, the jury found in favor of Caicos and against Alco on the trespass cause of action.  ARJN ¶ 3, Ex. C, 1-2.  The jury found in favor of Alco on the conversion cause of action, finding that Alco's conduct was not "a substantial factor in causing CAICOS's harm."  <u>Id.</u> at 3.  The jury awarded Caicos damages in the amount of $14,000.  <u>Id.</u> at 2.  Due to the settlement amount Sparetime had paid, the court reduced the damages award to zero.  CRJN ¶ 3, Ex. C, 5.

Caicos filed motions for a new trial and for a judgment notwithstanding the verdict.  ARJN, Ex. D.  Caicos contended, among other things, that the jury's verdict was inconsistent because the jury found Alco was a substantial factor in causing Caicos's harm in its verdict on the trespass cause of action, but that Alco was not a substantial factor in causing its harm in the verdict as to the conversion cause of action.  <u>Id.</u>  On January 28, 2011, the trial court denied both motions.  <u>Id.</u>  The court stated in part,

> Could ALCO have exceeded CAICOS'S consent for purposes
> of the trespass claim and yet not be determined to be a
> substantial factor in the conversion of the rail?  The

only way this court could explain the apparent conflict is if the jury found that the conduct of someone other than [Alco] caused the harm on the conversion theory. Still, after the jury found on CACI VF-2100 that CAICOS owned the spur, ALCO intentionally took possession of a portion of it, CAICOS didn't consent and <u>CAICOS</u> was harmed, the finding that ALCO'S conduct wasn't a substantial factor in causing the harm appears facially inconsistent. In light of the fact that on CACI VF-2000 the jury found that CAICOS owned the property, ALCO intentionally entered on it, ALCO'S conduct exceeded the scope of CAICOS'S permission and ALCO'S conduct was a substantial factor in causing actual harm to CAICOS the finding of no substantial factor on VF2100 is still harder to reconcile. To say that it is <u>beyond possibility of reconciliation</u>, however, goes too far.

<u>Id.</u> at 2 (emphasis in original).

Caicos filed a notice of appeal on January 10, 2011, but the appeal was dismissed as untimely. CRJN ¶ 3, Ex. C, 5-10.

On September 1, 2011, Alco filed this case in Alameda County Superior Court. Compl., Docket No. 3. In the complaint, Alco alleges that Chartis breached its obligations under the policy by refusing to defend and indemnify Alco in the <u>Caicos</u> action, and that it breached the implied covenant of good faith and fair dealing. <u>Id.</u> at ¶¶ 14-22. Alco asserts three causes of action against Chartis: (1) breach of insurance contract; (2) insurance bad faith; and (3) declaratory relief that Chartis has a duty to defend Alco in the <u>Caicos</u> action and to indemnify Alco for the liability or damages sought therein.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986);

Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

DISCUSSION

I.  Breach of the Insurance Contract and Declaratory Relief

Alco contends that Chartis had a duty to defend it in the Caicos action under Coverages A and B of the insurance policy. Chartis denies that either coverage is applicable.

To prevail, "the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential.  In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot."  Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 300 (1993).  "The duty to defend exists if the insurer becomes aware of, or if the third

party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." Delgado v. Interinsurance Exchange of Automobile Club of Southern California, 47 Cal. 4th 302, 308 (2009) (internal quotations and citations omitted).

A. Coverage A

The parties agree that coverage under this section turns on whether or not there was an occurrence. As previously noted, the policy defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy at ALCO000417.

"In the context of liability insurance, an accident is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." Delgado, 47 Cal. 4th at 308 (internal quotations and citations omitted). When evaluating whether something is an accident, the court evaluates "the conduct of the insured for which liability is sought to be imposed on the insured." Id. at 311. An "injury-producing event is not an 'accident' within the policy's coverage language when all of the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor." Id. at 311-12. Thus, "[a]n accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." Id. at 315 (internal quotations and citations omitted). See also Collin v. American Empire Ins. Co., 21 Cal. App. 4th 787, 810 (1994) ("the courts have recognized--virtually without exception--that deliberate conduct is not an 'accident' or 'occurrence' irrespective of the insured's state of mind"). "This

8

common law construction of the term accident becomes part of the policy" at issue in this case.  Id. at 308 (internal quotations and citations omitted).

Alco argues that "Sparetime's representations and requests to Alco to remove the rail" constituted "an independent and unforeseen happening," which "intervened" and caused Alco "to exceed the scope of Caicos's permission to enter the property." Opp. at 5-6.  It contends that it "did not enter Caicos's property and take the rail by its own volition and sole accord," but rather did so as a result of "negligently relying on statements made by Sparetime."  Id. at 5.  Under its reasoning, "[b]ecause of Sparetime's acts, Alco exceeded the scope of Caicos's consent and removed the rail."  Id.  Alco also contends that the jury did not conclude that it "intended to harm Caicos."  Id. at 7.

Chartis responds that Alco intended to take each step that lead to the harm and that its mistaken, but sincere, belief that it had permission to remove the rail did not make those purposeful acts accidental, even if Alco never intended to cause Caicos any harm.  Reply at 2-3.

Courts have routinely rejected the argument that a lack of "intent to harm" can transform otherwise volitional acts into accidents, finding that the term "accident" in this context "refers to the insured's intent to commit the act giving rise to liability, as opposed to his or her intent to cause the consequences of that act."  Collin, 21 Cal. App. 4th at 810.  See also Fire Ins. Exchange v. Superior Court (Bourguignon), 181 Cal. App. 4th 388, 393 (2010) ("it is well established in California that the term 'accident' refers to the nature of the act giving

9

rise to liability; not to the insured's intent to cause harm"); Merced Mutual Ins. Co. v. Mendez, 213 Cal. App. 3d 41, 48 (1989) ("appellants contend an accident occurs even if the acts causing the alleged damage were intentional as long as the resulting damage was not intended.  The argument urged by appellants has been repeatedly rejected by the appellate courts.").  Thus, however pure, Alco's subjective intent not to cause harm when entering the property and removing the rail is irrelevant.

Alco also cites no case that supports its contention that its mistaken beliefs that its actions were lawful and that it had Caicos's permission, which were caused by another, constituted an unexpected, independent, and unforeseen circumstance that would makes its actions accidental.  In a variety of contexts, "courts have in insurance cases rejected the notion that an insured's mistake of fact or law transforms a knowingly and purposefully inflicted harm into an accidental injury."  Delgado, 47 Cal. 4th at 312 (collecting cases).  Although not in precisely the same circumstances as those presented in the instant case, courts have rejected arguments similar to those made by Alco here, including arguments that an act was rendered an accident because the actor had a mistaken belief that he or she had permission or a right to act.

For example, in Bourguignon, homeowners renovated their house and extended it over a property line under the mistaken belief that they had the right to do so.  The homeowners relied upon their engineer's representation that he had taken the proper steps to secure their rights to the land.  181 Cal. App. 4th at 396. They insisted that "their engineer failed to obtain and include an

10

United States District Court
For the Northern District of California

executed grant deed in the Lot Line Adjustment application resulting in their failure to obtain the legal right to build where they did," and that his failure was "an unintended aspect in the causal series of events leading to the encroachment."  Id. The California Court of Appeal rejected this argument, stating that the homeowners' reasons for their actions were "irrelevant to the determination whether the act in locating the building where they did can be characterized as an accident," and that there "was no unexpected and unintended event between the intentional construction of the building and the encroachment."  Id.  Their "mistaken belief in their legal right to build" did "not transform their intentional act of construction into an accident."  Id.

In cases involving sexual assault, courts also have rejected the notion that the insured's reasonable, yet mistaken, belief that the claimant had consented to the act could transform the happening into an accident.  See Quan v. Truck Ins. Exchange, 67 Cal. App. 4th 583, 598-601 (1998); see also Lyons v. Fire Ins. Exchange, 161 Cal. App. 4th 880 (2008).  The courts state that the lack of intent to do harm or violate the rights of another cannot "convert volitional physical acts into 'accidents' within the meaning of that term in the policy under California law."  Id. at 599.  "The other party's consent, or the lack thereof, cannot change the nature of the insured's deliberate acts."  Id.  "In other words, injurious physical contact may have been a 'mistake,' but it was no 'accident.'"  Id.

Examples provided by other courts in their analyses are useful in simplifying the distinction between accidental conduct and intentional acts for which the results were not intended.

11

1    These also help to illustrate that the "additional, unexpected,

2    independent, and unforeseen happening" must be a subsequent, not

3    prior, event to the volitional activity and must be directly

4    responsible for producing the injury.  See Delgado, 47 Cal. 4th at

5    309 ("it is the unexpected, undesigned, and unforeseen nature of

6    the injury-causing event that determines whether there is an

7    'accident' within the policy's coverage").  In Merced, the

8    California Court of Appeal explained,

9          When a driver intentionally speeds and, as a result,
10         negligently hits another car, the speeding would be an
           intentional act.  However, the act directly responsible
11         for the injury -- hitting the other car -- was not
           intended by the driver and was fortuitous.  Accordingly,
12         the occurrence resulting in injury would be deemed an
           accident.  On the other hand, where the driver was
13         speeding and deliberately hit the other car, the act
           directly responsible for the injury -- hitting the other
14         car -- would be intentional and any resulting injury
           would be directly caused by the driver's intentional
15         act.

16   213 Cal. App. 3d 50.  In a later opinion, the same court explained

17   the distinction in the following way:

18         For example, a worker mops the floor at a fast-food
           restaurant, wetting it and reducing the coefficient of
19         friction between that floor and a potential shoe sole.
           The act of mopping the floor is intentional; it is not
20         an accident.  A customer then enters, slips and falls.
           This second event may be an "additional, unexpected,
21         independent and unforeseen happening" producing an
           injury, and hence may be an "accident" giving rise to a
22         duty to defend.  However, the intentional act of mopping
           the floor alone, just as the intentional act of sexual
23         intercourse alone, is not an accident and does not
           trigger the defense duty.

24   Quan, 67 Cal. App. 4th at 601 n.16.  In both of these examples, if

25   the act that caused the injury was intentional, then the injury

26   was not an accident.  In contrast, if the person engaged in an

27   intentional act, which was then followed by an unanticipated act

28

1   that they did not intend, and the latter was the act directly

2   resulted in the injury, the injury was then an accident.

3       Here, the allegations in the underlying complaint were that

4   Alco entered the property, removed the rail spurs and then sold

5   them as scrap metal.  Although it did not intend to harm Caicos

6   and acted under the belief that it was authorized to take these

7   actions, Alco has not offered any material dispute of fact that it

8   was intended to carry out each of these acts in the manner in

9   which they were done and that it accomplished its objective, in

10  taking the metal away and selling it.

11      Alco argues that there was no finding that it "intentionally

12  removed the rail" and that it did not enter the property and take

13  the rail "by its own volition and sole accord."  Opp. at 5-7.

14  However, an examination of the underlying complaints and the other

15  facts known to Chartis at the time of the tender demonstrates that

16  the allegations made were that Alco voluntarily entered the

17  property, removed the rail spurs and then sold them as scrap

18  metal, based on the misrepresentation of Sparetime, not that Alco

19  was forced to engage in any of these actions against its will.

20  "The determination whether the insurer owes a duty to defend

21  usually is made in the first instance by comparing the allegations

22  of the complaint with the terms of the policy."  Horace Mann Ins.

23  Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993).  "Facts extrinsic

24  to the complaint also give rise to a duty to defend when they

25  reveal a possibility that the claim may be covered by the policy."

26  Id.  There were no allegations in the underlying complaints or

27  facts that would have been known to Chartis when Alco tendered

28  defense of that action that would suggest that Sparetime somehow

United States District Court
For the Northern District of California

forced Alco against its volition to enter the property, to remove the rail or to sell it; instead, the allegations suggest that Alco relied on Sparetime's purported misrepresentations to act.  This is supported by Alco's letters to Chartis asking it to reconsider denial of the tender of defense.  On October 21, 2009, Alco wrote that, when it acted, it "believed that it had the consent and permission of the plaintiff to remove the rail."  Norma Decl., Ex. A, 2.  On March 4, 2010, it reiterated that it "believed that it had the owner's permission and consent to remove the railroad tracks."  Norma Decl., Ex. B, 2.  Further, in its cross-complaint against Sparetime, Alco alleged that "Sparetime, who Alco understood was still acting as an agent of Caicos, requested that Alco remove a 600 foot portion of a railroad spur on the Property, which Alco also agreed to do."  Cross-Compl. ¶ 8.  There is no evidence that Alco provided Chartis with any facts that would suggest that it did not act intentionally; instead, all facts provided and allegations made suggested that it did, but that it relied on what it said was a misrepresentation by Sparetime.

Alco suggests that the trial court's January 28, 2011 order suggested that Alco's actions were accidental and not intentional because the jury had found that, on the conversion claim, Alco's conduct was not a substantial factor in causing Caicos's damage, even though Alco "intentionally took possession of a portion" of the spur, and that the harm was the result of the acts of a third party, not Alco, making its actions unintentional.  However, as Chartis points out, the jury did find that Alco's actions were "a substantial factor in causing actual harm" to Caicos in the trespass claim.  Further, "the extrinsic facts which may create a

duty to defend must be <u>known by the insurer</u> at the <u>inception</u> of the third party lawsuit; and . . . the duty to defend ceases as soon as it has been shown that there is <u>no</u> potential for coverage," with no "continuing duty to investigate whether there is a potential for coverage." <u>Gunderson v. Fire Ins. Exch.</u>, 37 Cal. App. 4th 1106, 1114 (1995) (emphasis in original).  Thus, the jury verdict and the court's post-trial statements, which were not known at the inception of the lawsuit or time of tender, are not relevant to Chartis's determination.  Further, the suggestion that another party's actions were the primary cause of Caicos's harm does not mean that Alco's accused actions were accidental or non-volitional.

Finally, Alco argues that, because a trespass may be found negligent under California law, the claims might have fallen within the policy.  Both parties agree, "It is not the form or title of a cause of action that determines the carrier's duty to defend, but the potential liability suggested by the facts alleged or otherwise available to the insurer."  Opp. at 7 (quoting <u>CNA Casualty of California v. Seaboard Surety Co.</u>, 176 Cal. App. 3d 598, 609 (1986)); Reply at 5.  Although the 1AC included negligence claims, California courts have made clear that "negligent and accidental are not synonymous."  <u>Quan</u>, 67 Cal. App. 4th at 596 (internal quotations and citations omitted).  For example, a "purported honest but unreasonable belief in consent would constitute negligence," but would not make a volitional sexual assault accidental, as explained above.  <u>Id.</u> at 598 (internal quotations and citations omitted).  Similarly, a negligent belief that Alco had authorization, as was alleged in

the negligence causes of action, does not render its volitional acts in entering the property and removing the rail involuntary or accidental.

Accordingly, the Court finds that Coverage A under the policy was not implicated by the Caicos action.

B. Coverage B

Alco also sought coverage under Coverage B, which provides that Chartis must defend Alco in suits in which damages because of personal and advertising injury are sought. As previously noted, the policy defines "personal and advertising injury" to include injury arising out of the "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." Policy at ACLO000417-18. The parties dispute whether the "person" who is the occupant in this definition means only a "natural person" or if it can include a business entity or organization such as Caicos or Sparetime.

Although the California Supreme Court has not confronted this issue, the California Courts of Appeal have. "When (1) a federal court is required to apply state law, and (2) there is no relevant precedent from the state's highest court, but (3) there is relevant precedent from the state's intermediate appellate court, the federal court must follow the state intermediate appellate court decision unless the federal court finds convincing evidence that the state's supreme court likely would not follow it." Ryman v. Sears, Roebuck & Co., 505 F.3d 993, 994 (9th Cir. 2007).

United States District Court
For the Northern District of California

16

In <u>Mirpad, LLC v. California Ins. Guarantee Assn.</u>, 132 Cal. App. 4th 1058, 1064 (2005), the California Court of Appeal interpreted the following definition to apply only to claims by natural persons and not by corporations or other entities: "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of: (a) a room; (b) a dwelling; or (c) premises; that a person occupies by or on behalf of its owner, landlord or lessor." <u>Id.</u> at 1064.  The language in this provision is identical to that at issue here.[1]  In so holding, the court first discussed the "relevant general principles of policy construction" under California law.  <u>Id.</u> at 1068.  It noted, among other things, that courts "<u>interpret these terms in context, and give effect to every part of the policy with each clause helping to interpret the other</u>." <u>Id.</u> at 1069 (internal quotations and citations omitted) (emphasis in original).  It explained the "same meaning rule," which provides that words "used in a certain sense in one part of an instrument are deemed to have been used in the same sense in another." <u>Id.</u> (internal quotations and citations omitted).  "Ambiguity is not necessarily to be found in the fact that a word or phrase isolated from its context is susceptible of more than one meaning." <u>Id.</u> (internal quotations and citations omitted).  Thus, "language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." <u>Id.</u> (internal quotations and citations omitted).

---

[1] The only difference is that, in the policy here, the words "room, dwelling or premises" were not a lettered list.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Applying these principles, the court stated that the "policy repeatedly uses the words 'person' and 'organization' separately and distinctly" and that each word must thus be accorded a separate meaning. Id. at 1070-71. The court also noted that, in all other places the word "person" was used in the policy, it clearly could only relate to a "natural person." Id. at 1071. The court found this interpretation supported by its understanding that "the places from which the eviction must take place are places where people live." Id. at 1072. The court also noted that, if "'person' is interpreted to include organizations, the word 'organization' in the oft-repeated phrase 'person or organization' becomes redundant and surplusage." Id. at 1072. It concluded that such a result would be contrary to the "very fundamental principle" of construction "that policy language be so construed as to give effect to every term." Id. It also found that an interpretation that would read the word "organization" out of the policy as redundant would create ambiguities to the coverage of the policy where none exist. Id. at 1073. In concluding that, even though the word in other contexts might mean a corporation or other legal entity, in the context of the policy when read as a whole, the word "person" can "only mean a natural person," the court stated that this meaning was "'explicit and clear' and free from ambiguity." Id. at 1074 (emphasis in original).

Subsequent California Court of Appeal cases have been in accord. In Golden Eagle Ins. Corp. v. Cen-Fed, Ltd., 148 Cal. App. 4th 976 (2007), the same panel that decided Mirpad found "the same result . . . compelled" where there was "essentially

United States District Court
For the Northern District of California

identical language in the wrongful eviction language in the policies" at issue there. Id. at 990-991. In Stonelight Tile, Inc. v. California Ins. Guarantee Assn., 150 Cal. App. 4th 19 (2007), the court relied on Mirpad and held that "coverage afforded under personal injury liability for wrongful eviction or wrongful entry only applies to claims by natural persons and is not available to a business organization like Stonelight." Id. at 40.

The few federal cases that have considered this issue under California law have reached the same result. In ABM Indus. v. Zurich Am. Ins. Co., 2006 U.S. Dist. LEXIS 67884 (N.D. Cal.), the court considered identical policy language and found that "the insurance policy did not cover eviction of the party in the underlying action . . . [f]or the same reasons as stated in Mirpad." Id. at *59-63. In an unpublished and non-precedential decision, In re Captain Blyther's, Inc., 152 Fed. App'x. 669 (9th Cir. 2005), a panel of the Ninth Circuit relied on Mirpad to conclude that, because the relevant policy used "the words 'person' and 'organization' separately and distinctively with the term 'person' referring to 'natural persons,'" and the relevant party was "not a natural person," coverage was not available. Id. at 670. Although Alco suggests that the Ninth Circuit rejected the holding of Mirpad in a recent unpublished decision, this is not accurate. In Century Surety Co. v. Helleis, 367 Fed. App'x. 765, 766 (9th Cir. 2010), the Ninth Circuit rejected an insurance company's reliance on Mirpad because, in Century Surety, the person who was evicted was not a corporation, but instead was an individual doing business under another name and thus Mirpad was

**United States District Court**
For the Northern District of California

inapplicable.  Id. at 766.  See Pinkerton's, Inc. v. Superior Court, 49 Cal. App. 4th 1342, 1348 (1996) ("Use of a fictitious business name does not create a separate legal entity.").

Alco generally avers that "Mirpad, Golden Eagle, Stonelight, and ABM were wrongly decided," and relies on the Seventh Circuit's decision in Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co., 521 F.3d 743, 747 (7th Cir. 2008), to argue that the word is ambiguous.  In that decision, the Seventh Circuit applied Illinois law.  Id. at 747.  The court reasoned that "Illinois courts have held that if a term in a contract is undefined, a court should afford the term its plain, ordinary and popular meaning as derived from the term's dictionary definition," and that the dictionary definition can include "both natural persons and corporations which, at the very least, means that the use of 'person' in the policy is ambiguous."  Id. (internal quotations and formatting omitted).  The court found support for its finding that the provision was ambiguous in the fact that the policy, like the one here, used the phrase "natural person" in another subpart of the definition of "personal injury."  Id. at 748.  The Seventh Circuit distinguished Mirpad on the basis that the court there applied California law.  However, Alco offers no case in which a court reached such a result under California law.  Thus, the Court finds that Supreme Laundry is not persuasive authority for the interpretation of this contract provision under California law.

The Court adopts the reasoning of Mirpad, Golden Eagle, Stonelight, and ABM, which analyzed contract provisions similar to those at issue here.  The courts rejected the argument that the word "person" is ambiguous because it may refer to a corporate

entity in other situations, noting that the fact that a word or phrase read in isolation may be susceptible to more than one meaning was not dispositive and that the intended meaning had to be gleaned by looking at the document as a whole. <u>Mirpad</u>, 132 Cal. App. 4th at 1069-70. Like the policies in <u>Mirpad</u>, <u>Golden Eagle</u>, <u>Stonelight</u>, and <u>ABM</u>, the policy frequently refers separately to "person" and "organization" and repeatedly uses the phrase "person or organization," including in another part of the definition of "personal or advertising injury," quoted above. It also sometimes refers separately to an "entity" as well, which would be rendered surplusage if "person" were read to encompass a legal entity. <u>See, e.g.,</u> Policy at ALCO000382, ALCO000396, ACLO000411. In many of the instances in which "person" is used by itself, it is clear that it can only mean a "natural person." <u>See, e.g.,</u> Policy at ACLO000381 ("This exclusion does not apply to: . . . (2) A watercraft you do not own that is: . . . (b) not being used to carry persons or property for a charge")); ALCO000383 ("The spouse, child, parent, brother or sister of the person as a consequence of bodily injury to that person. . ."); ALCO000412 ("<u>Bodily injury</u> means bodily injury, physical injury, sickness, disease, mental anguish or emotional distress, sustained by any person, including death resulting from any of these at any time.").

Unlike the policies in <u>Mirpad</u>, <u>Golden Eagle</u>, <u>Stonelight</u> and <u>ABM</u>, the policy here does use the phrase "natural person" in one instance, in another part of the definition of "personal or advertising injury." <u>See</u> Policy at ALCO000418. Thus, if person were read in the policy to mean "natural person," the word

21

United States District Court
For the Northern District of California

"natural" in that phrase would be rendered surplusage.  However, reading the word "natural" once out of the contract would not create ambiguities, whereas reading the word "organization" out several times would.  See Mirpad, 132 Cal. App. 4th at 1073 ("if the word "organization" is redundant and therefore unnecessary, then the offense of libel and slander is effectively rewritten to read: 'oral or written publication of material that slanders or libels a person or disparages a person's goods, products or services.'  To do so, however, creates an ambiguity as to whether the policy covers commercial slander as well as personal libel and slander.").

Further, although Alco argues that Chartis's definition of "personal and advertising injury" would be a "de facto exclusion" and "exclusions must be conspicuous," the phrase appears in a grant of coverage and not in an exclusion.  As Chartis points out, this distinction has significance:

> An insurance policy is written in two parts: the insuring agreement defines the type of risks which are covered, while the exclusions remove coverage for certain risks which are initially within the insuring clause. . . . Therefore, before even considering exclusions, a court must examine the coverage provisions to determine whether a claim falls within the potential ambit of the insurance. . . . This is significant for two reasons.  First, when an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded. . . . Second, although exclusions are construed narrowly and must be proven by the insurer, the burden is on the insured to bring the claim within the basic scope of coverage, and (unlike exclusions) courts will not indulge in a forced construction of the policy's insuring clause to bring a claim within the policy's coverage.

Collin, 21 Cal. App. 4th at 802-803 (internal quotations and formatting omitted).  Thus, because this definition is part of the

insuring agreement and not part of an exclusion, it need not be narrowly construed and the burden of proof is on Alco to establish that its claim falls within the scope of coverage.

Alco also argues that "obviously, the term 'premises' could not be limited to 'dwelling' or residential property because Alco was not in the business of renting residential property." Opp. at 19. However, as the Mirpad court noted, "The United Pacific policy did not contain policy language that was written specifically for Mirpad, such that Mirpad could have had an objectively reasonable expectation that the policy would afford coverage for the alleged wrongful eviction of corporate tenants." Mirpad, 132 Cal. App. 4th at 1074. Similarly, here, the policy is generic and this provision was not written specifically for Alco. Further, the fact that one particular scenario does not fall under the insurance policy's coverage does not render the coverage illusory.

Alco also argues, "Coverage should not depend on whether the plaintiff whose property has been wrongfully entered into or who has been wrongfully evicted is a natural person, a sole proprietorship, or a corporation or whether the property is residential or commercial." Opp. at 18. However, the Court cannot expand coverage beyond what is granted in the policy. Further, Alco has cited no authority in support of this assertion, other than Century Surety, which is inapplicable here as previously discussed and which also does not make such a statement or holding.

Finally, Alco seeks to distinguish the California Court of Appeal decisions on the basis that they involved claims "for

23

**United States District Court**
For the Northern District of California

breach of lease" and not for trespass.  However, <u>Stonelight</u> did involve claims for trespass.  150 Cal. App. 4th at 27 (causes of action included "public and private nuisance, negligence, battery, trespass to land, and intentional and negligent infliction of emotional distress").  Further, the same language in the provision in the policy here applies to both "wrongful eviction" and "wrongful entry" claims, and Alco provides no reason to distinguish between these two causes of action in terms of the definitions and applications of the policy terms.

Accordingly, "Coverage B" under the policy was not implicated by the <u>Caicos</u> action.  Because neither coverage applies, the Court GRANTS Chartis's motion for summary judgment on Alco's claims for breach of contract and declaratory judgment and DENIES Alco's cross-motion.

II.  Breach of Implied Covenant of Good Faith and Fair Dealing

Because Chartis did not breach its contract with Alco by refusing to defend it in the <u>Caicos</u> action, the Court also GRANTS Chartis's motion for summary judgment on Alco's claim for breach of the implied covenant of good faith and fair dealing and DENIES Alco's cross-motion for summary judgment on this claim. "California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing." <u>Manzarek v. St. Paul Fire & Marine Ins. Co.</u>, 519 F.3d 1025, 1034 (9th Cir. 2008) (citing <u>Waller v. Truck Ins. Exch., Inc.</u>, 11 Cal. 4th 1, 35-36 (1995)).

CONCLUSION

For the reasons set forth above, the Court GRANTS Chartis's motion for summary judgment (Docket No. 25) and DENIES Alco's cross-motion for summary judgment (Docket No. 31).

The Clerk shall enter judgment.  Chartis shall recover its costs from Alco.

IT IS SO ORDERED.

Dated: 11/21/2012

CLAUDIA WILKEN
United States District Judge